ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/13/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**NATIONAL CREDIT UNION ADMINISTRATION BOARD and GRAEME W. BUSH,**

                  Plaintiffs,

- against -

**U.S. BANK NATIONAL ASSOCIATION,**

                  Defendant.

18 Civ. 11366 (LLS)

**OPINION & ORDER**

    Plaintiffs brought this action against defendant U.S. Bank National Association ("U.S. Bank") alleging breach of contract, negligence, gross negligence, and breach of fiduciary duty for failure to perform its duties as trustee. Plaintiffs also allege that U.S. Bank is not entitled to indemnification from the trusts' funds for costs incurred in this action. Defendant moves to dismiss the Second Amended Complaint for failure to state a claim upon which relief can be granted. For the following reasons, the motion to dismiss the Second Amended Complaint is granted.

## BACKGROUND

    The following facts are as alleged in the Second Amended Complaint ("SAC") (Dkt. No. 71).

    This action arises from U.S. Bank's role as trustee for 50 trusts that issued residential mortgage-backed securities ("RMBS") created between 2004 and 2007. Each trust consists of hundreds of individual residential mortgage loans pooled

-1-

together and securitized for sale to investors.

To create the securities, an originator first determines whether potential borrowers are qualified to receive mortgage loans, a process called underwriting. A sponsor then purchases loans in bulk from the originator and transfers them to a depositor. The depositor transfers the loans to a trust. The trust issues notes or certificates to investors, also known as "certificateholders." A master servicer or servicer collects periodic loan payments from borrowers and transfers them to the trustee. The trustee then uses those payments to make scheduled principal and interest payments to investors.

Four federal credit unions (U.S. Central Federal Credit Union, Western Corporate Federal Credit Union, Members United Corporate Federal Credit Union, and Southwest Corporate Federal Credit Union) purchased RMBS certificates in the 50 trusts at an original face value of approximately $4.7 billion.

Plaintiff National Credit Union Administration Board ("NCUA Board") is an independent federal agency in the executive branch that charters and regulates federal credit unions. In 2010, NCUA Board placed the four federal credit unions into involuntary liquidation and appointed itself as their liquidating agent. As liquidating agent, NCUA Board succeeds to the credit unions' rights, titles, powers, and privileges, and brought this action on their behalf.

To stabilize the credit union system's funding, NCUA Board created NCUA Guaranteed Notes Trusts ("NGN Trusts") and transferred some of the four credit unions' residential mortgage-backed securities to the NGN Trusts. Plaintiff Graeme W. Bush is the separate trustee of and joins this action on behalf of the NGN Trusts.

Each of the 50 trusts is governed by a Pooling and Servicing Agreement ("PSA"), a contract between the depositor, master servicer or servicer, trustee, and other parties. As RMBS investors, plaintiffs are third-party beneficiaries of the PSAs. The PSAs are substantially similar and impose the same three primary duties upon U.S. Bank as the trustee, which are separated into pre-Event of Default ("pre-EOD") and post-Event of Default ("post-EOD") duties.

First, U.S. Bank has a pre-EOD duty to take physical possession of the underlying mortgage files, review them, and certify that they are complete and accurate. If U.S. Bank discovers any missing or defective documents, it must notify the relevant parties[1] and enforce the warrantor's[2] obligation to cure, substitute, or repurchase the defective loan.

Second, if U.S. Bank discovers an originator or sponsor's

---

[1] The relevant parties include the originator, trust administrator, master servicer, and servicer.
[2] The "warrantor" refers to the entity responsible for the repurchase of defective loans and is generally either the originator of the loans, the seller of the loans, or the sponsor of the securitization.

-3-

breach of representations and warranties ("warranties") concerning the loans (such as warranties related to the borrowers' characteristics, collateral, or whether the loans were originated in accordance with underwriting criteria), it has a pre-EOD duty to notify the relevant parties and enforce the warrantor's obligation to cure, substitute, or repurchase the defective loan.

Third, if U.S. Bank has actual knowledge or written notice of an Event of Default ("EOD"), it has a post-EOD duty to exercise its rights and powers with the degree of care and skill of a prudent investor. An EOD arises when a master servicer or servicer breaches its servicing duties, the master servicer or servicer receives written notice of its breach, and the master servicer or servicer fails to cure the breach within a specified time. A servicer's duties include monitoring delinquent borrowers, monitoring compliance with warranties regarding loan origination, tracking mortgage documentation, foreclosing on defaulted loans, and managing and selling foreclosed properties.

Plaintiffs allege that U.S. Bank was aware of defective mortgage files, loans with warranty breaches, and EODs, yet failed to provide notice of them, enforce warrantor repurchase duties, or exercise its rights and powers prudently. As a result, plaintiffs suffered losses from the decrease in value of their certificates.

Plaintiffs brought this action on December 5, 2018, alleging that U.S. Bank breached its obligations under the PSAs and acted with negligence and gross negligence. They also allege that U.S. Bank breached its fiduciary duty to certificateholders by failing to avoid conflicts of interest, perform its duties with due care, and act with undivided loyalty.

Additionally, plaintiffs allege that U.S. Bank breached the PSAs by using the trusts' funds to pay for its expenses associated with this action. Plaintiffs seek a declaratory judgment that U.S. Bank is not permitted indemnification from the trusts.

U.S. Bank moves to dismiss the breach of contract, negligence, gross negligence, and breach of fiduciary duty claims for failure to state a claim, and moves to stay the indemnification claims pending resolution of the underlying claims.

**DISCUSSION**

On a motion to dismiss under Rule 12(b)(6), the court accepts "all factual allegations in the complaint as true, drawing all reasonable inferences in favor of the plaintiff." Kelly-Brown v. Winfrey, 717 F.3d 295, 304 (2d Cir. 2013). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

### 1. Breach of Contract Claim

U.S. Bank argues that plaintiffs' breach of contract claim should be dismissed because (1) some PSAs contain "negating clauses" that bar plaintiffs from suing, (2) some PSAs contain "no-action clauses" that bar plaintiffs from suing, and (3) U.S. Bank did not have a duty to act and its duty did not arise.

Negating Clauses

U.S. Bank first argues that plaintiffs do not have standing to sue under 37 trusts' PSAs because those PSAs contain negating clauses that state, "Nothing in this Agreement or in the Certificates, express or implied, shall give to any Person, other than the parties to this Agreement and their successors hereunder and the Holders of the Certificates, any benefit or any legal or equitable right, power, remedy or claim under this Agreement . . . ." Adler Decl. Ex. D § 11.11.

Plaintiffs do not dispute that as third-party beneficiaries to the PSAs, they are neither parties to the PSAs nor Holders of

-6-

the Certificates as defined in the PSAs.[3]  Thus, they lack standing to enforce the 37 PSAs.  However, a "beneficial owner who lacks standing may receive authorization to sue from the registered Holder, and that authorization may be granted subsequent to the filing of the lawsuit."  Royal Park Investments SA/NV v. HSBC Bank USA, Nat. Ass'n, 109 F. Supp. 3d 587, 607 (S.D.N.Y. 2015).  Here, the registered holder of the certificates at issue is Cede & Co., and plaintiffs state that they "are in the process of seeking Cede & Co.'s consent to continue pursuing contract claims on the 37 trusts as its authorized proxy."  Pls. Br. at 4.

"Courts in this district have allowed plaintiffs to seek authorization from Cede & Co. even when the contract does not specifically authorize them to do so because under New York law, contracts are freely assignable absent language that prohibits assignment."  Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co., 172 F. Supp. 3d 700, 712 (S.D.N.Y. 2016) ("Phoenix Light v. Deutsche Bank").  Therefore, plaintiffs' breach of contract claim with respect to the 37 trusts governed by PSAs with negating clauses are dismissed, subject to plaintiffs curing their lack of standing.  See id. ("The plaintiffs represent that

---

[3] Although investors like plaintiffs are often referred to as "certificateholders," the PSAs define a "Holder" of Certificates as "The registered owner of any Certificate as recorded on the books of the Certificate Registrar."  Adler Decl. Ex. D § 1.01.

they are in the process of obtaining Cede & Co.'s consent to bring this case as an authorized proxy . . . The claims with respect to the other trusts for which authorization is pending are dismissed without prejudice, subject to the plaintiffs' curing their lack of standing."); Commerzbank AG v. Deutsche Bank Nat'l Tr. Co., 234 F. Supp. 3d 462, 476 (S.D.N.Y. 2017) ("Commerzbank's breach of contract claims with respect to the ten Trusts governed by PSAs with negating clauses are dismissed without prejudice, subject to Commerzbank curing its lack of standing").

## No-Action Clauses

U.S. Bank also argues that plaintiffs are barred from suing under 5 trusts' PSAs because they contain no-action clauses. Those clauses set conditions that certificateholders must satisfy before suing to enforce the PSAs: (1) a certificateholder provides either the trust administrator or securities administrator with written notice of an EOD, (2) 25% of certificateholders make a written request to the trust or securities administrator to initiate suit, and (3) the trust or securities administrator refuses to initiate suit for 60 days after receiving the request. U.S. Bank argues that plaintiffs, who purport to sue as certificateholders, have not satisfied any of the conditions and are therefore barred from bringing this action.

In Cruden v. Bank of New York, 957 F.2d 961, 968 (2d Cir. 1992), the Second Circuit held that it "obviously is correct" that a no-action clause requiring debenture holders to notify the trustee of an EOD and request that the trustee bring suit did not bar debenture holders' claims against the trustee, "as it would be absurd to require the debenture holders to ask the Trustee to sue itself."

Here, however, the no-action clause in the five trusts at issue require certificateholders to notify and make a request upon either the trust administrator or securities administrator, not the trustee. Wells Fargo Bank, N.A. ("Wells Fargo") is the trust administrator or securities administrator of the five trusts; it also serves as the master servicer of the five trusts, as well as servicer, custodian, and originator of some of the trusts.

Because plaintiffs claim that U.S. Bank breached its obligation to enforce the PSAs against servicers and originators, plaintiffs argue that requiring them to request that Wells Fargo (as trust or securities administrator) sue U.S. Bank, for the purpose of having U.S. Bank enforce the PSA against Wells Fargo (as servicer or originator), is equally absurd as requiring plaintiffs to request that a party sue itself. U.S. Bank argues that it is not absurd to ask a non-trustee to sue a trustee, and that plaintiffs allege misconduct

by Wells Fargo only in its roles as servicer and originator, not as trust or securities administrator.

Courts in this district are split on whether Cruden should also apply here. Compare Commerzbank AG v. U.S. Bank Nat'l Ass'n., 277 F. Supp. 3d 483, 496 (S.D.N.Y. 2017) (holding that plaintiff "was required to make a demand" on trust and securities administrators who were also servicers to sue the trustee for failing to take action against servicers "despite whatever incentive they may have had to stall litigation") with Bakal v. U.S. Bank Nat'l Ass'n, No. 15 Civ. 6976 (PKC), 2018 WL 1726053, at *7 (S.D.N.Y. Apr. 2, 2018), aff'd, 747 F. App'x 32 (2d Cir. 2019)[4] (holding that plaintiffs' claims were not barred by the no-action clause because requesting "Wells Fargo to enforce the PSA against U.S. Bank, for the purpose of having U.S. Bank enforce the PSA against Wells Fargo" would be "an absurd application of the no-action clause").

Although no-action clauses "are strictly construed," Cruden, 957 F.2d at 968, the reasoning in Bakal is sound. Requiring plaintiffs to request that Wells Fargo sue U.S. Bank based on U.S. Bank's failure to monitor and enforce Wells Fargo's servicing duties should not be a barrier to suing U.S.

---

[4] The Second Circuit's summary order stated, "We acknowledge that there is a split among the courts in our Circuit as to whether it would be 'equally absurd' to make a demand on the servicer to sue the trustee on behalf of the trust for failing to take action against the servicer," but "do not opine on the merits of that issue here." Bakal, 747 F. App'x at 38.

Bank directly for that failure.

### Pre-EOD Duties

Under the PSAs, U.S. Bank's pre-EOD duties are limited to "such duties and only such duties as are specifically set forth in this Agreement," and "no implied covenants or obligations shall be read into this Agreement against the Trustee." Adler Decl. Ex. C § 9.01. As U.S. Bank frequently, and correctly, asserts, its "role is not to 'police' their investments or to act as a fiduciary or guarantor. Its duties instead are limited to those specifically and expressly set forth in the contracts." Def. Br. at 1.

If U.S. Bank discovers or receives written notice of defective mortgage files and warranty breaches in the trusts, U.S. Bank's pre-EOD duties are to provide notice and enforce repurchase of the defective loans. See, e.g., SAC Ex. H (quoting HVMLT 2005-1 PSA § 2.03):

> Upon its discovery or receipt of written notice of any materially defective document in, or that a document is missing from, a Mortgage File or of the breach by the Originator of any representation, warranty or covenant under the Servicing Agreement in respect of any Mortgage Loan which materially adversely affects the value of that Mortgage Loan or the interest therein of the Certificateholders, the Trustee shall promptly notify such Originator of such defect, missing document or breach and request that the Originator deliver such missing document or cure such defect or breach within 90 days from the date that the Seller was notified of such missing document, defect or breach, and if the Originator does not deliver such missing document or cure such defect or breach in all material respects during such period, the Trustee shall enforce the Originator's obligation under the Servicing Agreement and cause the Originator to repurchase that Mortgage Loan from the Trust Fund

-11-

> at the Repurchase Price (as defined in the Servicing Agreement) on or prior to the Determination Date following the expiration of such 90 day period.

U.S. Bank argues that for 30 trusts, it did not have any duties related to mortgage files because it was not trustee when those duties arose. The trustee's mortgage file duties include reviewing mortgage files, preparing certifications that each mortgage file is complete and accurate, and creating exception reports noting any missing or defective documents. Under the PSAs, the trustee is required to deliver the certifications and exception reports within a specified period of time (no longer than a year) from the Closing Date. Of the 50 trusts, the latest closing date is June of 2007, so the latest date the trustee could have had those duties is June of 2008. The trustee then was Bank of America. U.S. Bank did not become trustee for those trusts until 2009 or 2010 when it replaced Bank of America. After it took over as trustee, however, U.S. Bank had a duty to provide notice and enforce repurchase of file defects it discovered after becoming trustee.

U.S. Bank also argues that 33 trusts' PSAs do not impose a duty to enforce the warrantor's obligation to repurchase loans with file defects or warranty breaches. They either assign that duty to a different party, do not specify any party with that duty, or the duty arises only upon U.S. Bank's receipt of written notice. It is common ground that in the 33 trusts U.S.

-12-

Bank has the duty to provide notice of file defects and warranty breaches of which it received written notice or which it discovered.

However, plaintiffs do not adequately plead that U.S. Bank discovered or received written notice of defective documents or warranty breaches in any of the trusts.

The SAC alleges that U.S. Bank knew of systemic issues with RMBS trusts based on: government and media reports of originators' abandonment of underwriting standards and sponsors' disregard of prudent securitization standards, government investigations, lawsuits brought by monoline insurers that insured RMBS trusts, the trusts' enormous losses, the high rate of borrower delinquencies and defaults, the collapse of certificates' credit ratings, U.S. Bank's own review of loan files as master servicer or servicer for other RMBS trusts, and U.S. Bank's own involvement in repurchase litigation against warrantors. SAC ¶¶ 110, 144, 148, 157.

The SAC also alleges that U.S. Bank received a letter from the Association of Mortgage Investors discussing servicer misconduct and instructing U.S. Bank to remedy EODs, id. ¶ 193, monthly reports of defaults and delinquencies, id. ¶ 134, and written instructions from institutional investors to investigate ineligible mortgages in the loan pools, id. ¶ 154.

Those allegations raise a plausible inference that U.S.

Bank discovered and received written notice of the widespread, systemic issues with RMBS loans and trusts in general, but not that U.S. Bank discovered or received written notice of specified defective files or warranty breaches in any of the 50 trusts it served as trustee. Thus, U.S. Bank's pre-EOD duties did not arise.

Plaintiffs' breach of contract claim with respect to pre-EOD duties is dismissed, with leave to replead.

### Post-EOD Duties

An EOD occurs when (1) a master servicer or servicer breaches, (2) a designated party gives the master servicer or servicer written notice of the breach, and (3) the master servicer or servicer fails to cure the breach within a specified time.

If U.S. Bank has actual knowledge of or written notice of an EOD, U.S. Bank has a post-EOD duty to exercise its rights and powers with the degree of care and skill of a prudent investor. See, e.g., SAC Ex. H (quoting BAFC 2007-D PSA § 9.01):

> In case an Event of Default has occurred of which a Responsible Officer of the Trustee shall have actual knowledge (which has not been cured or waived), the Trustee shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise as a reasonably prudent investor would exercise or use under the circumstances in the conduct of such investor's own affairs.
> . . .
> The Trustee shall not be charged with knowledge of any default or an Event of Default under Section 8.01 unless a Responsible Officer of the Trustee obtains actual knowledge of such default or Event of Default or any Responsible Officer of the Trustee

-14-

receives written notice of such default or Event of Default at its Corporate Trust Office from the Master Servicer, the Securities Administrator, the Depositor or any Certificateholder.

U.S. Bank argues that its post-EOD duty never arose because plaintiffs do not allege that (1) an EOD occurred, nor that (2) U.S. Bank had actual knowledge or received written notice of an EOD.

Even if an EOD occurred, plaintiffs do not adequately plead that U.S. Bank had actual knowledge or received written notice of an EOD for the same reasons stated above. Plaintiffs only allege U.S. Bank's actual knowledge and written notice of systemic RMBS problems, and do not allege that U.S. Bank had actual knowledge or written notice of a particular EOD in any of the 50 trusts. Thus, U.S. Bank's post-EOD duties did not arise.

Plaintiffs' breach of contract claim with respect to post-EOD duties is dismissed, with leave to replead.

## 2. Tort Claims

Under New York's economic loss doctrine, a "plaintiff cannot seek damages by bringing a tort claim when the injury alleged is primarily the result of economic injury for which a breach of contract claim is available." Phoenix Light v. Deutsche Bank, 172 F. Supp. 3d at 718-19. "[W]e have made clear that where plaintiff is essentially seeking enforcement of the bargain, the action should proceed under a contract theory."

Dormitory Auth. v. Samson Constr. Co., 30 N.Y.3d 704, 711 (2018) (citations and internal quotation marks omitted).

"Courts in this District have split with regard to the application of the economic-loss doctrine to tort claims brought against an RMBS trustee." BlackRock Allocation Target Shares: Series S. Portfolio v. Wells Fargo Bank, Nat'l Ass'n, 247 F. Supp. 3d 377, 399 (S.D.N.Y. 2017). "Dispositive in each case has been the nature of the plaintiff's claims: Does plaintiff allege damages that flow from the violation of a professional duty, or merely from the violation of the governing agreements?" Id.

Plaintiffs allege that U.S. Bank "negligently and with gross negligence failed to avoid conflicts of interest" and

> failed to perform with due care its ministerial duties as trustee, including (1) acting in good faith; (2) providing notice to certificateholders when appropriate, including when using trust funds for indemnification of the Defendant, when Defendant was informed of or otherwise discovered representation and warranty breaches, and when warrantors failed to repurchase breaching loans; and (3) acting with undivided loyalty to certificateholders.

SAC ¶¶ 252-53. They also allege that U.S. Bank breached its

> fiduciary duty following Events of Default to act in good faith, with due care and undivided loyalty, and without conflicts of interest, when performing the obligations set forth in the PSAs, and, in addition, to exercise all powers under the PSAs prudently once an Event of Default occurred.

Id. ¶ 258.

Those allegations demonstrate that plaintiffs' tort claims are based on U.S. Bank's failures to perform its contractual

-16-

duties under the PSAs, such as the duty to provide notice of warranty breaches and warrantors' failures to repurchase loans, and the post-EOD duty to exercise its rights and powers prudently. This is further demonstrated by the claims' specific references to the PSAs, such as allegations that U.S. Bank had "extracontractual duties under the PSAs" and a fiduciary duty to perform "the obligations set forth in the PSAs" and "exercise all powers under the PSAs prudently once an Event of Default occurred." See Nat'l Credit Union Admin. Bd. v. Deutsche Bank Nat'l Tr. Co., 410 F. Supp. 3d 662, 688-89 (S.D.N.Y. 2019) (dismissing tort claims because "the consistent references to the PSAs reveal how reliant NCUA's tort claims are on the contracts at issue"; "The fact that Deutsche Bank's alleged duty stems from the PSAs is revealed by the glaring oxymoron nestled within the PSAC's negligence allegations: 'Defendant owed the certificateholders, including Plaintiffs, extracontractual duties under the PSAs'" which is "an inherently untenable position seemingly taken purely to avoid the economic loss doctrine."); Triaxx Prime CDO 2006-1, Ltd. v. Bank of New York Mellon, No. 16 Civ. 1597 (NRB), 2018 WL 1417850, at *6 (S.D.N.Y. Mar. 8, 2018) ("plaintiffs seem to contend that merely labeling these claims 'extra-contractual' will somehow transmogrify them into extracontractual claims. It does not.").

Plaintiffs' alleged tort injury is that U.S. Bank "impaired

-17-

Plaintiffs' ability to fully collect the principal and interest due on their certificates and caused losses in the value of Plaintiffs' certificates." SAC ¶¶ 254, 260. Such damages are the same and occurred in the same manner as the contract claim's damages: U.S. Bank failed to take certain actions required under the PSAs, which resulted in losses to plaintiffs' RMBS investments. See Blackrock Core Bond Portfolio v. U.S. Bank Nat'l Ass'n, 165 F. Supp. 3d 80, 106 (S.D.N.Y. 2016) ("while the cause of action for breach of fiduciary duty may arise from common law duties and not from the contractual agreements, 'the injury' and 'the manner in which the injury occurred and the damages sought persuade us that plaintiffs' remedy lies in the enforcement of contract obligations,' and are barred by the economic loss doctrine."); Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n, No. 14 Civ. 9928 (KBF), 2016 WL 796850, at *11 (S.D.N.Y. Feb. 25, 2016), aff'd, 898 F.3d 243 (2d Cir. 2018) (dismissing breach of fiduciary duty claim as barred by the economic loss doctrine because "Plaintiff's allegations for damages arising from conflict of interest sound in defendants' failure to take contractual actions–that is, losses due to failures 'to take action in response to servicer violations' and 'to alert the certificateholders to the servicers' misconduct.'").

Plaintiffs' negligence, gross negligence, and breach of

fiduciary duty claims are dismissed, with leave to replead.

### 3. Indemnification Claims

Plaintiffs claim that U.S. Bank is not entitled to indemnification from the trusts' funds for its expenses associated with this action. U.S. Bank seeks a stay of the indemnification claims pending resolution of the underlying claims.

All other claims in this action having been dismissed, plaintiffs' indemnification claims are also dismissed, with leave to replead.

### CONCLUSION

Defendant's motion to dismiss the complaint (Dkt. No. 47) is granted, with leave to amend.

Defendant's motion for oral argument (Dkt. No. 64) is denied.

So ordered.

Dated:  New York, New York
        February 13, 2020

*Louis L. Stanton*
LOUIS L. STANTON
U.S.D.J.