ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NATIONAL CREDIT UNION ADMINISTRATION
BOARD and GRAEME W. BUSH,

                          Plaintiffs,

        - against -

U.S. BANK NATIONAL ASSOCIATION,

                          Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _9/23/20_

18 Civ. 11366 (LLS)

OPINION & ORDER

        Plaintiffs brought this action against defendant U.S. Bank
National Association ("U.S. Bank") alleging breach of contract
for failure to perform its duties as trustee.  Plaintiffs also
allege that U.S. Bank is not entitled to indemnification from
the trusts' funds for costs incurred in this action.  Defendant
moves to dismiss the Fourth Amended Complaint for failure to
state a claim upon which relief can be granted.  For the
following reasons, the motion to dismiss is granted in part and
denied in part.

                          **BACKGROUND**

        The following facts are as alleged in the Fourth Amended
Complaint ("FAC") (Dkt. No. 86).

        This action arises from U.S. Bank's role as trustee for 50
trusts that issued residential mortgage-backed securities
("RMBS") created between 2004 and 2007.  Each trust consists of
hundreds of individual residential mortgage loans pooled
together and securitized for sale to investors.

-1-

To create the securities, an originator first determines
whether potential borrowers are qualified to receive mortgage
loans, a process called underwriting.  A sponsor then purchases
loans in bulk from the originator and transfers them to a
depositor.  The depositor transfers the loans to a trust.  The
trust issues notes or certificates to investors, also known as
"certificateholders."  A master servicer or servicer collects
periodic loan payments from borrowers and transfers them to the
trustee.  The trustee then uses those payments to make scheduled
principal and interest payments to investors.

Four federal credit unions (U.S. Central Federal Credit
Union, Western Corporate Federal Credit Union, Members United
Corporate Federal Credit Union, and Southwest Corporate Federal
Credit Union) purchased RMBS certificates in the 50 trusts at an
original face value of approximately $4.7 billion.

Plaintiff National Credit Union Administration Board ("NCUA
Board") is an independent federal agency in the executive branch
that charters and regulates federal credit unions.  In 2010,
NCUA Board placed the four federal credit unions into
involuntary liquidation and appointed itself as their
liquidating agent.  As liquidating agent, NCUA Board succeeds to
the credit unions' rights, titles, powers, and privileges, and
brought this action on their behalf.

To stabilize the credit union system's funding, NCUA Board

created NCUA Guaranteed Notes Trusts ("NGN Trusts") and transferred some of the four credit unions' residential mortgage-backed securities to the NGN Trusts.   Plaintiff Graeme W. Bush is the separate trustee of and joins this action on behalf of the NGN Trusts.

Each of the 50 trusts is governed by a Pooling and Servicing Agreement ("PSA"), a contract between the depositor, master servicer or servicer, trustee, and other parties.   As RMBS investors, plaintiffs are third-party beneficiaries of the PSAs.   The PSAs are substantially similar and impose the same three primary duties upon U.S. Bank as the trustee, which are separated into pre-Event of Default ("pre-EOD") and post-Event of Default ("post-EOD") duties.

First, U.S. Bank has a pre-EOD duty to take physical possession of the underlying mortgage files, review them, and certify that they are complete and accurate.   If U.S. Bank discovers any missing or defective documents, it must notify the relevant parties[1] and enforce the warrantor's[2] obligation to cure, substitute, or repurchase the defective loan.

Second, if U.S. Bank discovers an originator or sponsor's breach of representations and warranties ("warranties")

---

[1] The relevant parties include the originator, trust administrator, master servicer, and servicer.
[2] The "warrantor" refers to the entity responsible for the repurchase of defective loans and is generally either the originator of the loans, the seller of the loans, or the sponsor of the securitization.

concerning the loans (such as warranties related to the borrowers' characteristics, collateral, or whether the loans were originated in accordance with underwriting criteria), it has a pre-EOD duty to notify the relevant parties and enforce the warrantor's obligation to cure, substitute, or repurchase the defective loan.

Third, if U.S. Bank has actual knowledge or written notice of an Event of Default ("EOD"), it has a post-EOD duty to exercise its rights and powers with the degree of care and skill of a prudent investor.  An EOD arises when a master servicer or servicer breaches its servicing duties, the master servicer or servicer receives written notice of its breach, and the master servicer or servicer fails to cure the breach within a specified time.  A servicer's duties include monitoring delinquent borrowers, monitoring compliance with warranties regarding loan origination, tracking mortgage documentation, foreclosing on defaulted loans, and managing and selling foreclosed properties.

Plaintiffs allege that U.S. Bank was aware of defective mortgage files, loans with warranty breaches, and EODs, yet failed to provide notice of them, enforce warrantor repurchase duties, or exercise its rights and powers prudently.  As a result, plaintiffs suffered losses from the decrease in value of their certificates.

Plaintiffs brought this action on December 5, 2018.  On

-4-

February 13, 2020, the Court dismissed plaintiffs' claims, with leave to amend.

On April 13, 2020, plaintiffs filed their Fourth Amended Complaint, alleging that U.S. Bank breached its duties under the PSAs. Plaintiffs also allege that U.S. Bank breached the PSAs by using the trusts' funds to pay for its expenses associated with this action, and seek a declaratory judgment that U.S. Bank is not permitted indemnification from the trusts.

Defendants now move to dismiss the Fourth Amended Complaint, and to stay the indemnification claims pending resolution of the underlying breach of contract claim.

## DISCUSSION

On a motion to dismiss under Rule 12(b)(6), the court accepts "all factual allegations in the complaint as true, drawing all reasonable inferences in favor of the plaintiff." Kelly-Brown v. Winfrey, 717 F.3d 295, 304 (2d Cir. 2013). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

Pre-EOD Duties

Under the PSAs, U.S. Bank's pre-EOD duties are limited to
"such duties and only such duties as are specifically set forth
in this Agreement," and "no implied covenants or obligations
shall be read into this Agreement against the Trustee."  Chaiten
Decl. Ex. B § 9.01.[3]  U.S. Bank's pre-EOD duties to provide
notice or enforce repurchase arise only after it discovers, has
actual knowledge of, or receives written notice of defects and
breaches.

The court's previous Opinion and Order dismissing the
Second Amended Complaint held that plaintiffs' "allegations
raise a plausible inference that U.S. Bank discovered and
received written notice of the widespread, systemic issues with
RMBS loans and trusts in general, but not that U.S. Bank
discovered or received written notice of specified defective
files or warranty breaches in any of the 50 trusts it served as
trustee."  Feb. 13, 2020 Opinion and Order (Dkt. No. 78) at 13-
14.

---

[3] U.S. Bank argues again that 33 trusts' PSAs do not impose a duty to enforce
the warrantor's obligation to repurchase loans with file defects or warranty
breaches.  However, the court stated in its previous Opinion and Order that
those 33 trusts nevertheless impose on U.S. Bank a separate duty to provide
notice of file defects or warranty breaches.  U.S. Bank also argues again
that it did not have any duties related to mortgage file documents for 30
trusts because it did not become trustee of those trusts until 2009 or 2010.
However, the court's previous Opinion and Order stated that U.S. Bank had a
duty to provide notice and enforce repurchase of any file defects it
discovered in those trusts after it became trustee, and it is unknown at this
time exactly when U.S. Bank discovered defects.

-6-

Plaintiffs' Fourth Amended Complaint contains additional allegations that U.S. Bank discovered or received notice of specific loan file defects and warranty breaches in the trusts. Those allegations include:

- 15Ga-1 reports publicly filed with the SEC disclose mortgage loan repurchase requests based on warranty breaches in 21 trusts. "Plaintiffs believe that much, if not all of the data, contained in the 15Ga-1 reports for the individual trusts here was first compiled by Defendant before being turned over to the securitizers for public disclosure." FAC ¶ 120. "Defendant almost certainly discovered or received notice of the representation and warranty breaches identified for these 21 trusts when it helped prepare the 15Ga-1 reports. At a minimum, Defendant discovered or received notice of the breaches when they were published on EDGAR." Id. ¶ 122.

- U.S. Bank "was aware of and possessed copies of the final exception reports" that identified warranty breaches or missing or defective documents for four trusts. Id. ¶ 142. Additionally, "For 20 trusts, Defendant, or its agent, produced the final exception reports and circulated them to all deal parties. There can be no dispute that Defendant received copies of these reports and was aware of the material loan defects and representation and warranty breaches contained therein." Id. ¶ 144. For the other 30 trusts in which U.S. Bank was the successor trustee, "Defendant received copies of the final exception reports upon its acceptance of the successor trustee role." Id. ¶ 145.

- U.S. Bank publicly notified investors of warranty breaches in 3 trusts, and brought an action in New York State Supreme Court alleging loan-level warranty breaches in one trust. In another lawsuit brought by the Federal Housing Finance Agency to enforce repurchase obligations, U.S. Bank "would surely have been made aware of the loan-by-loan obligations underlying the complaint, especially since the defendant in the repurchase action, DLJ Mortgage Capital Inc., was required under the PSA to provide notice to Defendant of any loans with representation and warranty breaches." Id. ¶ 157.

- When originators or sponsors filed for bankruptcy, U.S. Bank submitted claims in their estate based on file defects and warranty breaches for 9 trusts.

- When individual borrowers sued U.S. Bank, it learned of warranty breaches from the complaints.  U.S. Bank also learned of breaches as a party to borrowers' foreclosure proceedings.

U.S. Bank states in its brief, "To the extent Plaintiffs now plead claims based on U.S. Bank's alleged loan-specific knowledge of Material R&W Breaches and missing or defective documents, U.S. Bank does not seek to challenge those allegations for pleading purposes . . . But Plaintiffs' claims based on inquiry notice, rather than alleged loan- and trust-specific knowledge, must again be dismissed."  Def. Br. at 18-19.  "Plaintiffs still fail to meet their pleading burden as to at least one trust here—WMALT 2006-AR2—because they do not allege any trust-specific information for this trust."  Def. Br. at 19 n.3; see Pl. Br. at 16 ("U.S. Bank (at 18) has dropped its challenges to Plaintiffs' R&W breach claims for 49 of the 50 trusts.").

The FAC sufficiently raises a plausible inference that U.S. Bank discovered, had actual knowledge, and received written notice of file defects or warranty breaches in the other 49 trusts.  See Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co., No. 14-CV-4394 (AJN), 2016 WL 439020, at *8 (S.D.N.Y. Feb. 3, 2016) ("As discussed at length above, the question at the motion to dismiss stage 'is not whether in fact the Trustee had actual knowledge—that is a factual determination left for

trial.  Instead, the question is whether plaintiffs have pled plausible facts supporting allegations of actual knowledge.'"); Royal Park Investments SA/NV v. HSBC Bank USA, Nat. Ass'n, 109 F. Supp. 3d 587, 603 (S.D.N.Y. 2015):

> Based on plaintiffs' detailed allegations, it is indeed plausible to infer that HSBC had actual knowledge of breaches in representations and warranties in the specific loans at issue. How HSBC gained this actual knowledge, or whether in fact it had actual knowledge, may be determined through discovery. If, after discovery, plaintiffs cannot prove that HSBC had actual knowledge regarding the loans at issue here, HSBC may move for summary judgment. But at this time, plaintiffs' allegations will suffice.

Accordingly, the motion to dismiss the contract claim for breach of pre-EOD duties is granted with respect to the WMALT 2006-AR2 trust, and denied in all other respects.

### Post-EOD Duties

An EOD occurs when (1) a master servicer or servicer breaches, (2) a designated party gives the master servicer or servicer written notice of its breach, and (3) the master servicer or servicer fails to cure its breach within a specified time.  U.S. Bank argues that plaintiffs do not allege the second and third elements of an EOD, and thus fail to allege that an EOD occurred in any of the trusts.  Therefore, U.S. Bank argues, its post-EOD duties never arose.

The FAC does not allege that a master servicer or servicer of the trusts received notice of a breach or failed to cure the breach.  Rather, it alleges servicer misconduct "that would have

-9-

ripened into events of default had Defendant taken the required actions." FAC ¶ 201. However, plaintiffs argue that because U.S. Bank was one of the designated parties that could notify a servicer of a breach, U.S. Bank cannot "take advantage" of its own failure to give notice due to the "prevention doctrine." Under the prevention doctrine, "a party may not insist upon performance of a condition precedent when its nonperformance has been caused by the party [it]self." Royal Park v. Deutsche Bank 2016 WL 439020, at *5 (alteration in original) (citation and internal quotation marks omitted).

U.S. Bank argues that the prevention doctrine does not apply because although U.S. Bank could have given notice to servicers, it did not have a duty to do so for 40 trusts. "Where a promisor has no duty to bring about the condition precedent to his promise, only active conduct by the promisor to frustrate the occurrence of the condition precedent constitutes waiver of that condition precedent." In re Bankers Tr. Co., 450 F.3d 121, 128 (2d Cir. 2006). "Bankers Trust stands for the proposition that the prevention doctrine applies where the party seeking to rely on the non-existence of a condition precedent (i) had a duty to bring about the condition precedent or (ii) actively frustrated its occurrence." Pac. Life Ins. Co. v. Bank of New York Mellon, No. 17 Civ. 1388 (KPF), 2018 WL 1382105, at *10 (S.D.N.Y. Mar. 16, 2018).

-10-

For those 40 trusts, U.S. Bank does not have a duty to provide notice to servicers and master servicers of their breaches.  Plaintiffs argue that the PSAs impose a duty to give notice because their description of an EOD states: "the Master Servicer fails to observe or perform in any material respect . . . and such failure continues unremedied for a period of 60 days after the date on which written notice of such failure . . . shall have been given to the Master Servicer by the Trustee or the NIMS Insurer or to the Master Servicer and the Trustee by the Holders of Certificates evidencing not less than 25% of the Voting Rights."  FAC ¶ 292 (emphasis added). However, the phrase "shall have been given" does not impose a mandatory obligation to give written notice.  Rather, the phrase is used in the context of defining EODs, and is not listed under the PSAs' separate section expressly stating the trustee's duties and obligations.  See Fixed Income Shares: Series M v. Citibank, N.A., 69 N.Y.S.3d 288, 290 (N.Y. App. Div. 2018) ("section 7.01(ii) does not require defendant to give that notice to cure; it merely defines 'Event of Default.'") (citation omitted); Blackrock Balanced Capital Portfolio (FI) v. U.S. Bank Nat'l Ass'n, 86 N.Y.S.3d 484, 485 (N.Y. App. Div. 2018) (holding that PSAs with "shall have been given" language "do not require U.S. Bank to send a notice to cure, but merely designate it as one of the parties that is permitted to send

-11-

such a notice").

Nor is there any indication that U.S. Bank engaged in active conduct to prevent servicers from receiving written notice; its failure to provide notice did not actively frustrate or prevent other designated parties from providing notice. See id. at 486 ("A defendant's failure to send a notice to cure to the servicers is not 'active conduct' within the meaning of the prevention doctrine").

Therefore, with respect to the 40 trusts for which U.S. Bank does not have a duty to give notice in order for an EOD to occur, the prevention doctrine does not apply. Because plaintiffs do not allege that a servicer received notice of a breach, they do not adequately allege that an EOD occurred, and U.S. Bank's post-EOD duties under those trusts did not arise.

The other 10 trusts' PSAs, however, impose on U.S. Bank a duty to give notice to servicers of breaches, so the prevention doctrine does apply, and the condition requiring notice to servicers in order for an EOD to occur is excused.[4]

U.S. Bank also argues that even if EODs occurred in those 10 trusts, U.S. Bank's post-EOD duty did not arise because it did not have actual knowledge or receive written notice of EODs.

---

[4] U.S. Bank points out that other parties (such as the Securities Administrator, Depositor, or "Holders of Certificates evidencing not less than 25% of the Voting Rights") could have also given notice of servicer breaches. That does not negate U.S. Bank's duty, however.

-12-

The court's previous Opinion and Order held that U.S. Bank's post-EOD duties did not arise because "Plaintiffs only allege U.S. Bank's actual knowledge and written notice of systemic RMBS problems, and do not allege that U.S. Bank had actual knowledge or written notice of a particular EOD in any of the 50 trusts."  Feb. 13, 2020 Opinion and Order at 15.

The FAC now alleges that U.S. Bank "had actual knowledge of misconduct and failings by servicers and master servicers" and "material instances of non-compliance" in 6 of those 10 trusts. FAC ¶¶ 201, 205, 208.  It alleges that U.S. Bank learned of such misconduct from servicers' annual assessments of compliance with SEC criteria.  In one of those trusts, U.S. Bank also distributed a public notice to beneficial holders that an EOD would occur "due to a ratings downgrade suffered by the servicer" if not remedied within 180 days.  Id. ¶ 195.  Those failures "would have resulted in an event of default had Defendant acted as required."  Id. ¶ 207.

Those allegations sufficiently raise a plausible inference that U.S. Bank had actual knowledge and received written notice of such failures, and breached its post-EOD duties.  See Commerzbank AG v. Bank of New York Mellon, No. 15-CV-10029 (GBD), 2017 WL 1157278, at *5 (S.D.N.Y. Mar. 21, 2017) ("Plaintiff alleges that BNYM received at least three written notices of servicing violations which, viewed in the light most

-13-

favorable to Plaintiff, plausibly alleges knowledge of events of

default."); Policemen's Annuity & Ben. Fund of City of Chicago

v. Bank of Am., NA, 943 F. Supp. 2d 428, 442-43 (S.D.N.Y. 2013):

> There is no doubt that, by the terms of the PSA, a viable breach of contract claim depends on the Trustee's actual notice of a breach of the PSA and failure to take appropriate action in response thereto. The gravamen of defendants' argument is that plaintiffs have to be able to allege unequivocally that defendants had actual notice in order to state a claim. That, however, mistakes the standard of proof with the plausibility required at the pleading stage.
>
> . . .
>
> On this motion to dismiss, the question for the Court is not whether in fact the Trustees had actual notice—that is a factual determination left for trial. Instead, the question under the Rule 8 pleading standard—as elaborated by Twombly and Iqbal—is whether plaintiffs have pled plausible facts supporting allegations of actual notice.

Accordingly, the motion to dismiss the contract claim for

breach of post-EOD duties is denied with respect to the 6 trusts

for which U.S. Bank had a duty to provide notice and had

knowledge of servicer breaches,[5] and granted in all other

respects.

## Statute of Limitations

Because "the defendants bear the burden of establishing the

expiration of the statute of limitations as an affirmative

defense, a pre-answer motion to dismiss on this ground may be

granted only if it is clear on the face of the complaint that

the statute of limitations has run." Fargas v. Cincinnati

---

[5] Those trusts are: BAFC 2005-F, BAFC 2005-H, BAFC 2007-B, BAFC 2007-D, GPMF 2007-AR1, and SASC 2006-BC3. See FAC ¶ 208; Chaiten Decl. Ex. C. Chart 2A.

<u>Mach., LLC</u>, 986 F. Supp. 2d 420, 427 (S.D.N.Y. 2013).
"Limitations-based arguments in RMBS fraud actions have not
generally been accepted at the motion to dismiss phase" because
"Prospective plaintiffs in such actions often have a difficult
task in obtaining sufficient notice of the facts underlying
their claims."   <u>Commerzbank AG v. Deutsche Bank Nat'l Tr. Co.</u>,
234 F. Supp. 3d 462, 473 (S.D.N.Y. 2017) (citation and internal
quotation marks omitted).

U.S. Bank argues that plaintiffs' pre-EOD claims are time-
barred by the six-year statute of limitations.[6]  The "date on
which the statute of limitations begins to run . . . shall be
the later of" "the date of the appointment of the Board as
conservator or liquidating agent" or "the date on which the
cause of action accrues."   12 U.S.C. § 1787(b)(14)(B).

Plaintiffs' contract claim for breach of pre-EOD duties
accrued on the dates U.S. Bank discovered or received notice of
loan issues but failed to take required action.  U.S. Bank
argues that the dates of NCUA Board's appointment as conservator
on March 20, 2009 and September 24, 2010 is the later date
because U.S. Bank discovered any file defects by June of 2008

---

[6] Under the NCUA "extender statute," the statute of limitations for contract
claims brought by NCUA Board in its capacity as a conservator or liquidating
agent is "the longer of— (I) the 6-year period beginning on the date the
claim accrues; or (II) the period applicable under State law."  12 U.S.C.
§ 1787(b)(14)(A).  Because the New York statute of limitations for contract
claims is also six years, CPLR § 213(2), that is the applicable limitations
period here.

and any warranty breaches by January of 2009.  Because
plaintiffs brought this action in 2018, more than six years
after NCUA Board's appointment, U.S. Bank argues that the claim
is time-barred.

It is unknown at this time exactly when U.S. Bank
discovered or received notice of each file defect and warranty
breach.  Although U.S. Bank was required to deliver exception
reports by June of 2008, it might have discovered file defects
after that time.  Although information about widespread,
systemic issues with RMBS trusts became available in January of
2009, U.S. Bank might have discovered specific warranty breaches
after that time.  Plaintiffs do not allege when U.S. Bank
discovered or received notice of the specific loan file defects
or warranty breaches in the trusts, and they are not required to
at this time.  See BlackRock Allocation Target Shares: Series S.
Portfolio v. Wells Fargo Bank, Nat'l Ass'n, 247 F. Supp. 3d 377,
394 (S.D.N.Y. 2017) (denying motion to dismiss claims that
defendant violated its duty to enforce repurchase obligations
for untimeliness and stating "At this stage, Plaintiffs are not
required to specify precisely when, and precisely on what basis,
Defendant breached each of its contractual obligations").

Given the factual questions concerning when U.S. Bank
discovered loan issues and when its duties arose, it is unclear
from the face of the FAC when each claim accrued and whether the

-16-

statute of limitations has expired; the parties' arguments regarding their tolling agreement and class-action tolling need not be addressed now.

Accordingly, the motion to dismiss the pre-EOD claims as untimely is denied, but without prejudice to U.S. Bank renewing its statute of limitations arguments at a later time. See id. ("Because, as the Court found above, Plaintiffs need not allege loan-specific breaches at this stage, and because Plaintiffs have raised the specter of tolling agreements and ongoing breaches, the Court is also unable to determine as a matter of law that Plaintiffs have insufficiently alleged discovery of R&W breaches before expiration of applicable statutes of limitations."); Pac. Life v. Bank of New York Mellon, 2018 WL 1382105, at *7 ("Because Plaintiffs have raised the specter of ongoing breaches, the Court is unable to determine as a matter of law that Plaintiffs have failed to allege discovery of breaches that occurred during the limitations period.").

## Indemnification

Plaintiffs claim that U.S. Bank is not entitled to indemnification from the trusts' funds for its expenses associated with this action.

Under the PSAs, U.S. Bank "shall be indemnified by the Trust Fund and held harmless against any loss, liability or expense . . . incurred by the Trustee or by the Trust

-17-

Administrator arising out of or in connection with the
acceptance or administration of the obligations and duties of
the Trustee or the Trust Administrator under this Agreement,"
but shall not be indemnified for "any loss, liability or expense
incurred by reason of willful misfeasance, bad faith or
negligence of the Trustee or of the Trust Administrator" in the
performance of its duties.  FAC ¶ 331.

Because plaintiffs allege that U.S. Bank willfully breached
its duties, the outcome of the breach of contract claim will
resolve whether U.S Bank can be indemnified.  Therefore, U.S.
Bank argues, plaintiffs' indemnification claims should be stayed
pending resolution of the underlying contract claim.

> When deciding whether to grant a stay, courts consider five
> factors: (1) the private interests of the plaintiffs in
> proceeding expeditiously with the civil litigation as balanced
> against the prejudice to the plaintiffs if delayed; (2) the
> private interests of and burden on the defendants; (3) the
> interests of the courts; (4) the interests of persons not parties
> to the civil litigation; and (5) the public interest.

Volmar Distributors, Inc. v. New York Post Co., 152 F.R.D. 36,
39 (S.D.N.Y. 1993).  Those factors weigh in favor of a stay, as
there is little prejudice to plaintiffs, and the court, parties,
and public have an interest in conserving resources and
efficient litigation.

Plaintiffs argue that if the claims are stayed, U.S. Bank's
continued withdrawals will deplete the trusts' funds, and U.S.
Bank will have an incentive to make litigation inefficient and

-18-

impede settlement efforts.  That is not prejudicial to

plaintiffs because if it is later found that U.S. Bank is not

entitled to indemnification, U.S. Bank must return all withdrawn

indemnity, so it has no incentive to increase its potential

expenses.  There is also no indication that U.S. Bank will not

be able to later reimburse withdrawn funds.  See Royal Park

Investments SA/NV v. Deutsche Bank Nat'l Tr. Co., No. 17 Civ.

5916 (AJN), 2018 WL 3849840, at *2 (S.D.N.Y. Aug. 10, 2018)

("Deutsche Bank's continued billing of the trusts for its legal

fees and expenses" is not prejudicial to plaintiff because "even

assuming arguendo that the Court were to conclude that this

billing were impermissible—that is, even if the Court were to

ultimately decide in Royal Park's favor—Royal Park does not

allege that Deutsche Bank would be unable to repay the Covered

Trusts if the Court ordered such repayment.").

     If U.S. Bank is ultimately found to have breached its

duties with "willful misfeasance, bad faith or negligence," U.S.

Bank cannot be indemnified.  Staying the indemnification claims

pending resolution of the underlying contract claim will avoid

the possible waste and inefficiency from unnecessary court

determinations on the indemnification claims and discovery

disputes concerning U.S. Bank's withdrawals and attorneys' fees.

See id. at *3 ("a stay of proceedings pending resolution of the

underlying litigation is the more efficient way to sequence

-19-

resolution of these two related actions, and may be necessary to avoid unnecessary determinations" because "Issues of Deutsche Bank's misconduct and/or negligence in the performance of its duties are at the very heart of the underlying litigation" and "almost certain to be the subject of further discovery pending in the underlying litigation"); Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n, 356 F. Supp. 3d 287, 299 (S.D.N.Y. 2018):

> Of course, whether U.S. Bank acted grossly negligently is a central factual question in the Underlying Suit. A finding in the Underlying Suit that U.S. Bank acted grossly negligently may fatally undermine its defenses to the Fees Complaint. If so, U.S. Bank would be forced to reimburse the trusts for the legal expenses it charged them. Thus, staying these proceedings could avoid a possible waste of both the parties' and the Court's resources. A stay also avoids the risks and inefficiencies associated with determining indemnification issues during ongoing litigation as opposed to at its conclusion.

Plaintiffs further argue that the court should determine as a matter of law that U.S. Bank is not entitled to indemnification under Hooper Assocs., Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 492 (1989), which requires that "a promise by one party to a contract to indemnify the other for attorney's fees incurred in litigation between them" be "unmistakably clear from the language of the promise."

Plaintiffs argue that the PSAs' indemnification clause is not "unmistakably clear" that it also allows indemnification for actions between parties to the PSAs. However, this is a third-party action brought by third-party beneficiaries of the PSAs, and Hooper is therefore inapplicable. Plaintiffs are neither

-20-

the indemnitor (the Trust Fund) nor the indemnitee (the Trustee
or Trust Administrator) of the clause, nor are they parties to
the PSAs.   See Nat'l Credit Union Admin. Bd. v. Deutsche Bank
Nat'l Tr. Co., 410 F. Supp. 3d 662, 691 (S.D.N.Y. 2019) (finding
that Hooper does not apply because plaintiffs are not
contracting parties but rather third parties to the PSAs); MBIA
Ins. Corp. v. Nationstar Mortg. LLC, No. 18 Civ. 938 (VB), 2019
WL 357932, at *5 (S.D.N.Y. Jan. 29, 2019) ("Because the
Certificateholders are not parties to the PSAs at issue in the
instant lawsuit, BNYM's litigation expenses in the underlying
lawsuits are not 'legal expenses for a suit between the
contracting parties,'" and such "third-party actions" "do not
trigger Hooper Associates's 'unmistakably clear' standard").

        Plaintiffs contend that they are parties to the
certificates, which incorporate the PSAs, and that the
certificates and PSAs should be construed together.  They also
argue that they are essentially the indemnitors because as
investors that receive distributions from the trusts' funds,
they bear the financial burden of any indemnification.  However,
construing the contracts together does not transform plaintiffs
into parties to the PSAs, and the fact that they are entitled to
receive periodic payments from the funds does not make them the
indemnitors.

        Accordingly, plaintiffs' indemnification claims are stayed

-21-

pending resolution of the breach of contract claim.

## **CONCLUSION**

Defendant's motion to dismiss the Fourth Amended Complaint (Dkt. No. 87) is granted in part and denied in part.

The motion to dismiss the contract claim for breach of pre-EOD duties is granted with respect to the WMALT 2006-AR2 trust, and denied in all other respects.  The motion to dismiss the contract claim for breach of post-EOD duties is denied with respect to the BAFC 2005-F, BAFC 2005-H, BAFC 2007-B, BAFC 2007-D, GPMF 2007-AR1, and SASC 2006-BC3 trusts, and granted in all other respects.

Defendant's request to stay the indemnification claims (Counts II and III) pending resolution of the breach of contract claim (Count I) is granted.

So ordered.

Dated:    New York, New York
          July **22**, 2020

                          *Louis L. Stanton*
                          LOUIS L. STANTON
                          U.S.D.J.

-22-