ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __3/30/23__

NATIONAL CREDIT UNION ADMINISTRATION
BOARD AND GRAEME W. BUSH,

                              Plaintiffs,

                - against –

U.S. BANK NATIONAL ASSOCIATION,

                              Defendant.

18 Civ. 11366 (LLS)

OPINION & ORDER

        Plaintiffs National Credit Union Association Board ("NCUA")

and Graeme Bush brought this action against defendant U.S. Bank

National Association ("U.S. Bank") for breach of contract,

alleging U.S. Bank failed to fulfill its duties as a trustee for

several trusts comprised of residential mortgage-backed

securities ("RMBS").

        NCUA filed a motion for partial summary judgment to

determine the scope U.S. Bank's duties as a trustee. (Dkt. No.

173). U.S. Bank filed a motion for partial summary judgment,

arguing that NCUA's claims are time-barred, that NCUA lacks

standing for some of its claims, and that several of NCUA claims

fail on their merits. (Dkt. No. 154).

        The motions are considered jointly.

                              1

**Background**

This action arises from U.S. Bank's role as trustee for fifty trusts that issued RMBS. Twenty trusts remain at issue (the "covered trusts"). U.S. Bank 56.1 Statement (Dkt. No. 156) at ¶ 1. Each trust consists of hundreds of individual residential mortgage loans pooled together and securitized for sale to investors. Id. at ¶ 2.

To securitize the loans, a lender originator issues mortgage loans to qualified borrowers, a process called underwriting. The originator then sells those loans to a sponsor, who groups the mortgage loans into a pool. That pool is then conveyed to a depositor. In connection with the conveyance of the pooled mortgage loans, the originator or sponsor (the "warrantor") makes representations and warranties ("R&W"s) regarding the quality of the mortgage loans and the nature of their underwriting. The depositor then transfers pooled loans to a trust, which is managed by a trustee. The right to receive income from the trust is divided into certificates and sold to investors, also known as "Certificateholders." The individual mortgage loans are managed by a master servicer,[1] who collects periodic loan payments from the borrowers and transfers those payments to the trustee. The trustee uses the income to make

---

[1] The master servicer may employ servicers to help fulfill its duties.

scheduled payments to the trust's investors. This securities transaction for each trust of the covered trusts closed between February 2005-June 2007. U.S. Bank (Dkt. No. 157) Ex. 1. The term "closed" designates the beginning of the trusts' existence and the trustee's duties to the trusts.

U.S. Bank is currently the trustee for all of the covered trusts. Id. at ¶ 1. For eleven of the trusts, U.S. Bank was the initial trustee. NCUA 56.1 Statement at ¶ 5. For nine trusts, U.S. Bank succeeded another bank to its role as trustee after the trust closed. Id. at ¶ 6-7.

Each trust is governed by a Pooling and Servicing Agreement ("PSA"), a contract between the depositor, master servicer or servicer, and U.S. Bank in its role as trustee. The investors are third-party beneficiaries of the PSAs. The PSAs impose duties on the trustee, which are separated into pre-Event of Default ("pre-EOD") duties and post-Event of Default ("post-EOD") duties. Unless an Event of Default ("EOD") occurs, the trustee's obligations are limited to the duties explicitly assigned in the PSA.

U.S. Bank had two pre-EOD duties. First, U.S. Bank had a "pre-EOD Mortgage File duty" to take physical possession of the mortgage files and review them for completeness. Mortgage file deficiencies are often discovered through the creation of

"exception reports," which lists defective loans.[2] If U.S. Bank discovered any issues with the mortgage files, such as missing documents, it was required to notify the relevant parties,[3] including the warrantor, who was then required to cure, substitute or repurchase the loan with the defective file. If the warranter failed to do so, under the terms of some (but not all) PSAs, U.S. Bank was required to enforce the warrantor's obligation to repurchase the loan.

Second, if U.S. Bank discovered a breach of the loans R&W, it was required to notify the relevant parties, including the warrantor, who was required to cure, substitute or repurchase the loan. If the warrantor failed to do so, under the terms of some (but not all) PSAs, U.S. Bank was required to enforce the warrantor's obligation to repurchase the loan with the breached R&W. This is U.S. Bank's "pre-EOD R&W duty."

If an Event of Default ("EOD") occurred and U.S. Bank had actual knowledge or written notice of the EOD, it had a "post-EOD duty" to exercise its rights and powers as a prudent person

---

[2] When U.S. Bank was the initial trustee, it created the exception reports or received them from third-party custodians at, or in the months following, the closing date of the trusts. When U.S. Bank was the successor trustee, U.S. Bank received the exception reports from the previous trustee at the time of its appointment as successor trustee.

[3] The relevant parties generally include the master servicer (and servicer if one exists), originator, seller, sponsor, and depositor. NCUA 56.1 Statement (Dkt. No. 175) at App'x D, App'x E.

4

would. An EOD has three steps; it occurs when a master servicer breaches its servicing duties, the trustee gives the master servicer written notice of its breach, and the master servicer fails to cure that breach. A master servicer's duties include tasks such as monitoring delinquent borrowers, foreclosing defaulting loans, managing compliance with warranties regarding loan origination, and managing foreclosed properties.

NCUA brings this action against U.S. Bank for breach of contract on behalf of three liquidated federal credit unions that invested in the covered trusts. U.S.B. 56.1 Statement at ¶ 20-21. NCUA alleges that U.S. Bank was aware of mortgage file deficiencies (the "pre-EOD Mortgage File claims") and breaches of the loan's R&Ws (the "pre-EOD R&W claims") yet failed to notify the relevant parties or enforce the repurchase of loans and that following EODs, U.S. Bank failed to act as a prudent investor (the "post-EOD claims").

NCUA moves for summary judgment for a declaration that, as a matter of law, U.S. Bank's Pre-EOD Mortgage File and Pre-EOD R&W duties to enforce the warrantor's repurchase of loans required U.S. Bank as trustee to initiate a lawsuit against the warrantor without the prior direction of and indemnification from the trusts' investors.

U.S. Bank moves for summary judgment, arguing that all of NCUA's claims are barred by the statute of limitations, that

5

NCUA lacks standing to sue for some of the certificates in the trusts, and that many of NCUA's claims fail on the merits.

## Legal Standards

Summary judgment is warranted if, based upon admissible evidence, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where "the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence." In re Lehman Bros. Sec. & ERISA Litig., 131 F. Supp. 3d 241, 249 (S.D.N.Y. 2015). In that event, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record" and may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Fed. R. Civ. P. 56(c)(1)(A); Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010). In cases regarding RMBS, NCUA must have evidence to support its claims "loan-by-loan and trust-by-trust." Phoenix Light SF Ltd. v. Bank of New York Mellon, 2017 WL 3973951, at *9 (S.D.N.Y. Sept. 7, 2017).

## Discussion

### I. Statute of Limitations

The statute of limitations for breach of contract in New York is six years. N.Y. C.P.L.R. 213 (McKinney). This action was

effectively filed[4] on October 26, 2017, so any claims that accrued before October 26, 2011, are time-barred.

**A. Pre-EOD Claims**

Under the terms of most PSAs, U.S. Bank had two pre-EOD duties following the discovery of mortgage file deficiencies or an R&W breach: to notify relevant parties of the breach and request that the warrantor cure that breach (the "duty to notify") and to enforce the warrantor's obligation to repurchase the defective mortgage loan (the "duty to enforce").

In summary judgment briefing, U.S. Bank and NCUA agreed that NCUA's claims accrued when U.S. Bank learned of deficient mortgage files or R&W breaches and failed to act, and that failure to act was before October 26, 2011. However, after that briefing was completed, the Appellate Division, First Department of the New York Supreme Court held the timeliness of Pre-EOD claims applies not to U.S. Bank's duty to identify deficient documents and notify the relevant parties, but to its follow-on duty to enforce. IKB Int'l, S.A. v. Wells Fargo Bank, N.A., 208 A.D.3d 423, 429 (1st Dep't 2022); Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n, 2022 WL 4621431, at *9 (S.D.N.Y. Sept. 30, 2022) (citing IKB, 208 A.D.3d at 429).

---

[4] The six-year period expired on October 26, 2017. The parties agreed to toll the running of the statute of limitations and extended the time to commence the suit for 405 days, and the Complaint was actually filed on December 5, 2018, but took effect as of October 26, 2017.

Under that ruling, the "duty to enforce is controlling for the purposes of measuring the timeliness" of NCUA's claims to trusts with PSAs that include a duty to enforce. Ambac, 2022 WL 4621431, at *9. However, some PSAs do not include a duty to enforce, so the statute of limitations differs for trusts that contain a Pre-EOD duty to enforce (the applicable six-year statute of limitations starts running when the event calling for enforcement occurs without corrective enforcement and the power to enforce it is lost) and those that do not, in which the usual state statute of limitations applies.

1. Trusts with a Duty to Enforce

Following IKB, for trusts with a duty to enforce, NCUA's claims accrued (and the statute of limitations began to run) when U.S. Bank failed to fulfil its duty to enforce. U.S. Bank necessarily failed that duty six years after the trusts closed,[5] which is when U.S. Bank's ability to remedy the trusts' breach of contract through repurchase litigation was barred by New York's six-year statute of limitations for breach of contract claims. Therefore, the statute of limitations for NCUA's claims to trusts with a duty to enforce began six years after the trusts closed.

---

[5] The date the trust "closed" designates the commencement of trusts existence and the trustee's duties.

8

Applying IKB here, NCUA's claims as to four trusts (HVMLT 2005-1, 2005-2, 2005-3, and 2005-8) are time-barred. Those trusts all closed on or before July 29, 2005. U.S.B. Ex. 1. Six years after that date, July 29, 2011, was the last date U.S. Bank could have filed a repurchase action for breach of contract and NCUA's claims accrued. As that date is before October 26, 2011, those claims are time-barred.

NCUA's claims to two more trusts, BAFC 2005-F and MLCC 2005-3 are time-barred. That is because the trustee's repurchase claims for breach of contract are governed by the state where the original trustee is located. The original trustee for those trusts is Wachovia, a North Carolina entity, meaning that North Carolina's three-year statute of limitations for breach of contract applied to those repurchase claims. N.C. Gen. Stat. § 1-52(1); Deutsche Bank Nat'l Tr. Co. v. Barclays Bank PLC, 34 N.Y.3d 327, 339 (2019). For those trusts, the repurchase claims therefore expired three years after those trusts closed, on August 30, 2008, and October 31, 2008, respectively. That is when NCUA's claims accrued, and as those dates are before October 26, 2011, they are time-barred.

2. Trusts without a Duty to Enforce

For trusts without a duty to enforce, NCUA cannot have a claim for breach of contract based upon U.S. Bank's failure to fulfil a duty to enforce because no such duty existed.

9

Therefore, the Appellate Division, First Department of the New York Supreme Court's decision in IKB does not apply, and the timeliness of NCUA's claims turns on U.S. Bank's failure to fulfill its duty to notify. NCUA concedes that U.S. Bank's failed its duty to notify (so the statute of limitations began to run) well before October 26, 2011. NCUA mot. at 8-9. Therefore, NCUA's claims based on a failure to notify are time-barred.

However, NCUA urges the court to find an implied duty to enforce in the PSAs of two trusts[6] that do not explicitly provide a duty to enforce. If a duty to enforce is read into those trusts, the statute of limitations on NCUA's claims to those trusts would be governed by IKB. As discussed supra, that would extend the date of accrual for NCUA's claims to six years after the trusts closed.

But the language in the PSAs is clear: "The Trustee, prior to the occurrence of an Event of Default and after the curing or waiver of all Events of Default that may have occurred, shall undertake to perform such duties and only such duties as are specifically set forth in this Agreement." HEAT 2006-7 § 8.01; MLMI 2005-3 § 8.01, U.S.B. Ex. 2. Therefore, "prior to an EOD,

---

[6] Those trusts are HEAT 2006-7 and MLCC 2005-3. NCUA Mot. at 15-16. HEAT 2006-7 does not have a duty to enforce any Pre-EOD breaches. MLCC 2005-3 does not have a duty to enforce R&W breaches but does have a duty to enforce Mortgage File breaches.

the trustee's duties are limited to those specifically set forth in the PSA," W.& S. Life Ins. Co. v. U.S. Bank Nat'l Ass'n, 209 A.E.3d 6, 13 (2022). The duty to enforce is not specifically set forth in the PSAs for those trusts, and such a duty will not be added in. W.& S., 209 A.E.3d at 13 (courts "cannot interpret contract provisions in a way that adds, removes or distorts the meaning of any words or phrases"); Pac. Life Ins. Co. v. US Bank Nat'l Ass'n, 2022 WL 11305628, at *32 (S.D.N.Y. Oct. 19, 2022).[7]

NCUA's Pre-EOD claims to trusts without an explicit duty to enforce are time-barred.[8]

However, NCUA attempts to save its Pre-R&W claims for two trusts without a duty to enforce, MLMI 2006-RM2 and MLMI 2006-RM3, by arguing that U.S. Bank "discovered" new R&W breaches after October 26, 2011. But a breach of warranty exists (for the difference between the warranty and the facts) when it is made,

---

[7] There is a recent split of authority in the First Department of New York regarding whether a duty to enforce should be read into PSAs that do not explicitly assign such a duty. Compare IKB, 208 A.D.3d at 425 with W.& S., 209 A.D.3d at 13. The issue is currently on appeal to the New York Court of Appeals, and the court is not bound by either decision. Pac. Life Ins. Co. v. US Bank Nat'l Ass'n, 2022 WL 11305628, at *32 (S.D.N.Y. Oct. 19, 2022).

[8] There is no duty to enforce any Pre-EOD claims in HEAT 2006-7, MLMI 2006-RM2, MLMI 2006-RM3, MLIMI 2007-HE3, so those claims are time-barred. U.S.B. Exs. 16, 21. There is no duty to enforce Pre-EOD Mortgage File claims in GPMF 2006-AR8 and GPMF 2007-AR1, so those claims are time-barred and only Pre-EOD R&W claims remain to those trusts. U.S.B. Ex. 16. There is also no duty to enforce Pre-R&W claims in MLCC 2005-3 and WMALT 2006-4, so those claims are time-barred and only Pre-EOD Mortgage File claims remain to those trusts. U.S.B. Ex. 21; U.S.B. 56.1 at ¶¶ 123-23.

not when it is discovered, and those breaches existed at the
time those trusts closed, ACE Sec. Corp. v. DB Structured Prod.,
Inc, 25 N.Y.3d 581, 595 (2015), well before October 26, 2011. Those
claims are time-barred.

**B. Post-EOD Claims**

Following an EOD, U.S. Bank had an obligation to act as a
prudent investor would under the circumstances, and NCUA's
claims accrued when U.S. Bank failed to act as such. NCUA argues
that several EODs occurred after October 26, 2011, e.g., NCUA
Ex. 266, meaning that U.S. Bank breached its obligation after
October 26, 2011. As such, NCUA post-EOD claims are timely.

**C. Class Action Tolling**

NCUA's main argument is that its time-barred claims were
tolled by class action lawsuits that included claims to the
covered trusts under the equitable doctrine announced by the
Supreme Court in American Pipe. American Pipe & Const. Co. v.
Utah, 414 U.S. 538 (1974). American Pipe tolling pauses the
statute of limitations from the time the class action is filed
until the plaintiff is no longer a member of the class. In re
WorldCom Sec. Litig., 496 F.3d 245, 254-55 (2d Cir. 2007).

U.S. Bank says that American Pipe tolling does not apply
because NCUA filed a previous action against U.S. Bank before
the initiation of any relevant class action. But the fact that
this is NCUA's second action does not impact the statute of

limitations. American Pipe tolling applies even if a plaintiff files an individual action before certification is resolved. Id.

Two class actions could toll NCUA's time-barred claims: BlackRock Allocation Target Shares: S. Portfolio v. U.S. Bank Nat'l Ass'n, No. 1:14-cv-09401 (S.D.N.Y. 2014) ("BlackRock I"), which was filed in federal court in November 2014, and BlackRock Balanced Capital Portfolio (FI) v. U.S. Bank Nat'l Ass'n, Index No. 652204/2015 (N.Y. Sup. Ct. June 19, 2015) ("Blackrock II"), which was filed in state court in June 2015. U.S. Bank says Blackrock I should be used to determine the amount of time the NCUA's claims for those trusts were tolled. If Blackrock I is used, only some of NCUA's claims are timely.[9] U.S.B. Ex. 12. NCUA says that Blackrock I cannot be used because it was pled as a "derivative action or, in the alternative as a class action" and is therefore not a class action lawsuit. As a result, BlackRock II must be used, and almost all of NCUA's claims are timely.[10]

Blackrock I is a class action that tolls NCUA's claims. The purpose of American Pipe tolling is to provide potential class members assurance that their legal claims will not expire while

---

[9] The Complaint in Blackrock I was filed Nov. 24, 2014. Plaintiffs in that case filed an Amended Complaint on July 2, 2015, which did not assert claims to the covered trusts, ending the tolling period. As a result, NCUA's claims were tolled 221 days.
[10] The Complaint in Blackrock II was filed June 19, 2015. NCUA commenced this action before the claims to the covered trusts were dismissed or the motion class certification was decided.

their class status is pending, preventing the filing of anticipatory litigation and avoiding "needless multiplicity of actions." See In re WorldCom, 496 F.3d at 257. That uncertainty of class status arose in Blackrock I, regardless of its labeling.

NCUA may not use two class actions to toll its claims. If two class actions are available, American Pipe tolling applies only to the first class action filed. Korwek v. Hunt, 827 F.2d 874, 878 (2d Cir. 1987). Therefore, Blackrock I tolls NCUA's claims by 221 days. As a result, all claims relating to GPMF 2007-AR1, HVMLT 2005-2, HVMLT 2005-3, HVMLT 2005-8 are timely. U.S.B. Exs. 1, 12.

## II. Standing

Fourteen covered trusts have negating clauses, which provide standing only to the Holder of the Certificates. U.S.B. Ex. 15. NCUA concedes that it is not the Holder of the Certificates in the covered trusts, as defined in the PSAs;[11] the registered Holder of the Certificates is CEDE & Co. U.S.B. 56.1 ¶ 604. But, although NCUA lacks standing, it "may receive authorization to sue from the registered Holder, and that authorization may be granted subsequent to the filing of the

---

[11] Although investors like plaintiffs are often referred to as "Certificateholders," the PSAs define a "Holder of the Certificates" as "the registered owner of any Certificate as recorded on the books of the Certificate Registrar."

14

lawsuit." Royal Park Investments SA/NV v. HSBC Bank USA, Nat. Ass'n, 109 F. Supp. 3d 587, 607 (S.D.N.Y. 2015). That authorization provides NCUA standing.

U.S. Bank argues that NCUA has failed to receive the necessary authorization for twenty three certificates across those fourteen trusts. However, before summary judgment briefing was completed, NCUA received the proper authorizations for all but three of the certificates at issue, rendering the question of standing moot except as to those three certificates. Allan Applestein TTEE FBO D.C.A. v. Province of Buenos Aires, 415 F.3d 242, 245 (2d Cir. 2005) (upholding plaintiff's standing when the authorization to sue was obtained after summary judgment briefing was completed).

NCUA has standing to bring its claims, except as to the three certificates for which NCUA does not have the proper authorization: BAFC 2007-B certificate A-2 and BAFC 2007-D certificates 1-A-1 and 1-A-2.

### III. Merits

#### A. MF Pre-EOD Claims

U.S. Bank contends that several of NCUA's Pre-EOD Mortgage File claims fail because (1) U.S. Bank did not discover or have notice of mortgage file breaches for the seven trusts for which

it succeeded Bank of America as trustee[12] and (2) U.S. Bank did not have a duty to enforce the warrantor's repurchase of the loans for seven trusts.[13] As discussed supra, the mortgage file claims for the seven trusts for which U.S. Bank correctly asserts that it did not have a duty to enforce (and therefore only had a duty to notify) are time-barred, so will not be addressed here.

For summary judgment, NCUA must have loan-specific evidence that U.S. Bank discovered or had written notice of mortgage file defects. U.S. Bank claims no such evidence exists for the seven trusts where U.S. Bank succeeded Bank of America as trustee. NCUA claims there is evidence that U.S. Bank discovered mortgage file defects when U.S. Bank received exception reports from Bank of American upon its succession to trustee.

However, the evidence NCUA points to shows only that U.S. Bank confirmed that it had received the physical loan files but "did not review the contents of those files." NCUA Ex. 164. It also shows U.S. Bank's understanding that "it was not required to undertake any further analysis of the documents it received as successor trustee. U.S. Bank understood that it was entitled

---

[12] Those trusts are: MSM 2006-15XS, WMALT 2006-AR4, MLMI 2006-RM2, MLMI 2006-RM3, MLMI 2007-HE3, MSM 2006-3AR and MSM 2007-5AX.  U.S.B 56.1 at ¶ 3.

[13] Those trusts are: GPMF 2006-AR8, GPMF 2006-AR1, HEAT 2006-7, MLMI 2006-RM2, MLMI 2006-RM3, MLMI 2007-HE3, and WMALT 2006-AR4. U.S.B. Ex. 16.

to rely upon the representations made in the succession agreements that predecessor trustee had fulfilled its obligations" to ensure the mortgage files were complete. Id. As discussed, supra, U.S. Bank only has the duties specifically and expressly assigned in the PSAs, which did not require U.S. Bank to re-review the physical loan files when it received them.

NCUA also points to a "mapping project" U.S. Bank conducted as evidence U.S. Bank discovered mortgage file problems. The "mapping project" ensured data from Bank of America's mortgage files was correctly integrated into U.S. Bank's database. Id. But there is no evidence that project did more than translate Bank of America's coding system into U.S. Bank's coding system, and to the extent U.S. Bank transferred the exception codes relating to exception reports, it "did not look at them in detail to each trust." Id., NCUA Ex. 149.

Because there is no evidence that U.S. Bank discovered mortgage file problems relating to the seven trusts for which U.S. Bank acted as a successor trustee, NCUA's Pre-EOD Mortgage File claims to those trusts fail.

### B. R&W Pre-EOD Claims

U.S. Bank contends NCUA's Pre-EOD R&W claims fail because (1) there is no evidence U.S. Bank discovered, had actual knowledge, or written notice of loan-specific, material R&W breaches, (2) if U.S. Bank had knowledge of loan-specific R&W

17

breaches, it satisfied its resulting duties as a trustee, and (3) U.S. Bank acted in good faith. Each argument is addressed in turn.

### 1. U.S. Bank's loan-specific knowledge of R&W breaches

U.S. Bank admits that it discovered loan-specific R&W breaches for 5,301 loans in fourteen trusts.[14]

In addition to those loans, NCUA claims U.S. Bank had loan-specific knowledge of R&W breaches when U.S. Bank received the trusts' exception reports because almost every trust[15] contained an R&W that the mortgage files were complete and valid (the "completeness R&W"). U.S. Bank concedes that it is not moving for summary judgment based on a breach of the completeness R&W for the trusts for which it was the initial trustee. U.S.B. Reply (Dkt. No. 169) at 18.

However, U.S. Bank does move for summary judgment on completeness R&W breaches for the trusts for which it was a successor trustee to Bank of America. As discussed supra, there is no evidence that U.S. Bank reviewed the exception reports from Bank of America. As NCUA has failed to put forth any other evidence that U.S. Bank had loan-specific knowledge of

---

[14] U.S. Bank did not have knowledge of loans with R&W breaches in the following six trusts: BAFC 2005-F, HVMLT 2005-1, HVMLT 2005-3, MLCC 2005-3, MLMI 2006-RM3, and MSM 2006-3AR. U.S.B. 56.1 Statement at ¶ 130.
[15] Only the WMALT 2006-AR4 trust did not include a completeness R&W.

completeness R&W breaches for those trusts, NCUA pre-EOD
completeness R&W claims fail.

NCUA offers evidence that U.S. Bank discovered R&W breaches
for another 33,367 loans. That evidence consists of twenty
spreadsheets, which provide over fifty details about each of
those 33,367 loans. NCUA Exs. 327-346. NCUA argues that some of
those details are "red flags" that should have put U.S. Bank on
notice of an R&W breach. But those spreadsheets, which were
created by NCUA for this litigation, fail to adequately show how
U.S. Bank would have received written notice of each of those
"red flags." Nor does NCUA adequately show that those "red
flags" themselves are an R&W breach.

Because NCUA "failed to adduce any evidence" that U.S. Bank
"discovered a breach of a representation or warranty" U.S.
Bank's motion for summary judgment is granted to all of the Pre-
EOD R&W claims, except for claims for the 5,301 loans for which
U.S. Bank knew of R& W breaches and the claims for completeness
R&W for the trusts for which U.S. Bank was the initial trustee.
Phoenix Light SF Ltd. v. Bank of New York Mellon, 2017 WL
3973951, at *7 (S.D.N.Y. Sept. 7, 2017).

### 2. U.S. Bank's fulfillment of its duties

U.S Bank argues that despite its knowledge of R&W breaches
in 5,301 loans, NCUA claims still fail because U.S. Bank
fulfilled its duty to enforce, to the extent one existed. At the

outset, U.S. Banks argues that such a duty did not exist for 2,268 of the 5,301 loans because they those loans are in trusts that did not include a duty to enforce.[16] As discussed, supra, because the PSAs for those trusts do not specifically and expressly assign a duty to enforce, U.S. Bank did not have that such a duty. NCUA claims to those loans fail.

For the remaining loans, U.S. Bank states that it satisfied its duty to enforce by demanding that the warrantor repurchase the defective loan or filing repurchase litigation with the direction and indemnification from the trusts' investors. U.S.B. Mot. at 30. NCUA says those actions are not enough to fulfill U.S. Bank's duty to enforce.

In its motion for summary judgment, NCUA argues that for trusts in which the PSAs state that U.S. Bank "shall enforce" a warrantor's obligation to repurchase defective loans, U.S. Bank's duty to enforce requires, as a matter of law, U.S. Bank to initiate repurchase litigation, even without the trusts' investors' direction and indemnification. NCUA contends that a plain reading of the word "enforce" requires U.S. Bank to compel the warrantor to carry out its duty to repurchase and that to "compel" the warrantors requires litigation. But that reading goes an inference too far. At summary judgment, the court

---

[16] Those trusts are: HEAT 2006-7, MLCC 2005-3, MLMI 2006-RM2, MLMI 2006-RM3, MLMI 2007-HE3, and WMALT AR-4.

interprets the language used in the contract according to its plain meaning. Ambac, 2022 WL 4621431, at *6. It does not attempt to add language beyond that. A plain reading of the word "enforce" does not require litigation, and nowhere in its dictionary definition is there reference to litigation. See Black's Law Dictionary (11th ed. 2019).

NCUA contends that even if the term "enforce" does not require litigation as a matter of law, U.S. Bank was still required to initiate repurchase litigation after discovering the R&W breaches here because it was the only effective method of enforcement. NCUA may be correct. Because the term "enforce" "is broad enough to embrace such a lawsuit as a means of enforcement," whether enforcement litigation was required to carry out U.S. Bank's enforcement duty is a question of fact to be decided at trial. Ambac, 2022 WL 4621431, at *11.

If enforcement litigation was required, the parties dispute whether U.S. Bank needed certificate holders' direction or indemnification to initiate that litigation. The PSAs states,

> The trustee shall not be under any obligation to
> exercise any of the rights or powers vested in it by
> this Agreement, or to institute, conduct or defend any
> litigation hereunder or in relation hereto, at the
> request, order of direction of any of the
> Certificateholders, pursuant to the provisions of this

21

Agreement, unless such Certificateholders shall have offered to the Trustee reasonable security or indemnity satisfactory to it against the costs, expenses and liabilities which may be incurred therein or thereby.

E.g., HVMLT 2006-4 § 8.02(iii); Libra App'x F. A plain reading of that language shows that U.S. Bank needs Certificateholders' indemnity for litigation only if that litigation is conducted at the request or direction of any Certificateholder. That provision does not prevent U.S. Bank from initiating repurchase litigation unilaterally.

### 3. U.S. Bank's good faith

U.S. Bank claims that any failure to fulfill its duty to enforce is excused by a good faith misunderstanding of the scope of the duties assigned to it in the PSAs. The PSAs provide that U.S. Bank cannot be "liable for any action taken, suffered or omitted by it in good faith and believed by it to be authorized" or for "an error of judgment made in good faith." U.S.B. Ex. 4. As such, U.S. Bank says NCUA must have evidence that U.S. Bank's understanding of the PSAs was so unreasonable and dishonest as to constitute bad faith.

"Whether a party to a contract has acted in good faith generally presents a question of fact for a jury." Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co., 585 F. Supp. 3d 540, 593

(S.D.N.Y. 2022). It may be that U.S. Bank's understanding of the PSAs was reasonable; however, NCUA has produced evidence, such as U.S. Bank's internal policies regarding U.S. Bank's duty to enforce, which raise "genuine questions" as to whether U.S. Bank "believed in good faith that it was not obligated to take certain actions, or instead failed to act for some other reason, including because it failed to properly investigate and appreciate the scope of its obligations" under the PSAs. Phoenix Light SF Ltd, 585 F. Supp. 3d at 593; NCUA 56.1 statement at ¶ 167.

### C. Post-EOD Claims

NCUA's post-EOD claims remain for only four trusts [17] and allege that following an EOD, U.S. Bank failed to act as a prudent investor. U.S. Bank contends that those claims fail because there is no evidence U.S. Bank's duty to act as a prudent investor arose. For U.S. Bank's duty to arise, NCUA must establish three elements: an EOD, U.S. Bank's actual knowledge or written notice of the EOD, and that U.S. Bank acted in bad faith.

U.S. Bank argues there is no evidence an EOD occurred. The PSAs for all Post-EOD Trusts provide that an EOD occurs when there is a master servicer default (which occurs when a master

---

[17] NCUA's post EOD claims are limited to four trusts: BAFC 2005-F, BAFC 2007-B, BAFC 2007-D, GPMF 2007-AR1.

servicer fails to perform its duties in any material way),
written notice from a designated party of that default to the
master servicer with a request to cure, and the master
servicer's failure to cure. U.S.B. Exs. 33-35, 37. On summary
judgment, facts "giving rise to an Event of Default must be
trust-specific." <u>Fixed Income Shares: £Series M v. Citibank
N.A.</u>, 130 F. Supp. 3d 842, 856 (S.D.N.Y. 2015).

There is evidence that a servicer defaulted for three
trusts. In 2012, Bank of America, N.A. (acting as a servicer)
self-reported material instance of noncompliance ("MINC") to
U.S. Bank and specifically identified at least one MINC that
impacted three of the post-EOD trusts: BAFC 2005-F, BAFC 2007-B,
and BAFC 2007-D. NCUA Ex. 266.[18] These MINCs, admitted by a
servicer, could be a master servicer default given the master
servicers' responsibility for the servicer.[19]

However, there is no trust-specific evidence that the
master servicer was given notice of these MINCs or that the MINC
remained uncured. Although NCUA has evidence that U.S. Bank
generally requested that Bank of America, N.A. cure self-

---

[18] For trusts BAFC 2005-F, BAFC 2007-B, and BAFC 2007-D, the PSAs
expressly assign responsibility for monitoring the servicer to
the master servicer. U.S.B. 56.1 Statement at ¶ 7; U.S.B. Ex.
26.

[19] NCUA presents evidence of several other notices received by
U.S. Bank regarding self-reported MINCs. However, none of those
notices connect a MINC to a specific trust. As the notices are
not trust-specific, they are not evidence of a Master Servicer
default.

reported MINCS in 2014, those requests do not align with the trust-specific MINCs admitted by Bank of America, N.A in 2012. NCUA Ex. 283.

NCUA puts forth two other possible grounds for an EOD. Both fail.

First, NCUA points to trust-specific certifications master servicers are required to file with the SEC regarding their servicer's compliance with its duties under the respective loan servicing agreements. NCUA alleges that these certifications were false because the servicers had access to the exception reports trusts for each trust, which showed mortgage file defects. NCUA says that because the servicers failed to correct the mortgage file defects, the servicers breached their duties, and the certifications were therefore false.

However, there is no evidence that servicers had a duty to correct mortgage file problem under the servicing agreements. Their duties are limited to tasks such as adding documents to the mortgage files, facilitating the release of the mortgage file in connection with full payment on the loan, and obtaining the mortgage file for foreclosure. NCUA Ex. 182. Mere knowledge of mortgage file deficiencies is not a breach of the servicers' duties, and as such, the certifications are not false.

Second, NCUA states that the servicers had a duty to ensure the pool assets were properly maintained and that they failed to

do so. However, NCUA again has provided no evidence that the servicers did in fact have such a duty, and as such, the certifications are not false.

As NCUA has presented no evidence of a trust-specific EOD, NCUA's post-EOD claims fail.

### IV. Conclusion

U.S. Bank's motion for partial summary judgment is granted in part. As such, the following NCUA claims fail:

1. All Pre-EOD claims for HEAT 2006-7, MLCC 2005-3, MLMI 2006-RM2, MLMI 2006-RM3, MLIMI 2007-HE3, BAFC 2005-F, HVMLT 2005-1, which are time-barred.

2. Pre-EOD Mortgage File claims for GPMF 2006-AR8, which is time-barred.

3. Pre-EOD R&W claims for WMALT 2006-AR1, which is time-barred.

4. All Pre-EOD claims based on U.S. Bank's duty to notify, which are time-barred, except claims for GPMF 2007-AR1, which were tolled by Blackrock I.

5. The three certificates for which NCUA lacks standing to sue: BAFC 2007-B certificate A-2 and BAFC 2007-D certificates 1-A-1 and 1-A-2.

6. Pre-EOD Mortgage File claims for the seven trusts for which U.S. Bank was a successor to Bank of America.

7. Pre-EOD R&W claims based on breaches of origination and underwriting R&Ws on all the loans, except claims to the loans for which U.S. Bank had loan-specific knowledge of an R&W breach and a duty to enforce.

8. Pre-EOD R&W claims based on breaches of mortgage file completeness R&Ws for the seven trusts in which U.S. Bank was a successor to Bank of America.

9. All Post-EOD claims.

The motion is denied in all other respects.

NCUA's motion for partial summary judgment is denied in part and granted in part.


So ordered.

Dated:   New York, New York
         March 30, 2023

                         *Louis L. Stanton*
                         LOUIS L. STANTON
                         U.S.D.J.